JAMES R. RUTH, *ET AL.*, PLAINTIFFS-RESPONDENTS, v. IRVING FENCHEL, DEFENDANT-APPELLANT.

Argued February 20, 1956—Decided March 21, 1956.

*Mr. Seymour Margulies* argued the cause for appellant (*Mr. Ezra L. Nolan,* attorney; *Mr. Maurice C. Brigadier* of counsel; *Mr. Margulies* on the brief).

*Mr. Eugene T. Sharkey* argued the cause for respondents (*Mr. John J. Wygant,* attorney).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. In this automobile accident case Mrs. Ruth had a verdict of $2,000 for personal injuries. She was allowed a new trial as to damages only at which

a verdict of $10,000 was returned in her favor. Defendant appealed to the Appellate Division, challenging the award of the new trial or, alternatively, its limitation to damages only, and asserting error at the new trial in permitting cross-examination of defendant's medical experts, Dr. Solk and Dr. Reilly, based upon medical treatises which were not relied upon by them in forming their expert opinions. The Appellate Division affirmed, 37 *N. J. Super.* 295 (1955), and we granted certification upon defendant's petition, 20 *N. J.* 135 (1955).

We think the Appellate Division rightly held that no reason was shown for upsetting the action of the trial judge in granting Mrs. Ruth a new trial limited to damages only. The law cited in the court's opinion, applied to the facts there fully set forth, amply justified the affirmance. And we find that both tribunals properly governed their respective dispositions according to the standards applicable to the grant or denial of a new trial and the appellate review thereof. *Hager v. Weber*, 7 *N. J.* 201 (1951); *Hartpence v. Grouleff*, 15 *N. J.* 545 (1954). There therefore exists no merit in this attack upon the Appellate Division judgment. *Cf. Colacurcio Contracting Corp. v. Weiss*, 20 *N. J.* 258 (1955).

The attack grounded in the cross-examination of defendant's medical experts relates to Mrs. Ruth's claim that she suffered a "whiplash" injury of the neck from the accident. The neck pains did not manifest themselves until some four months after the mishap. Defendant's medical testimony was in substance that the onset of pain symptomatic of "whiplash" must appear within a few hours. Mrs. Ruth's medical experts, on the other hand, testified that a "whiplash" could first manifest itself up to a year or even two years after the accident.

When Dr. Solk was cross-examined at the new trial the cross-examiner produced a copy of the medical treatise by *Key and Conwell, Fractures, Dislocations and Sprains*, published in 1946. Dr. Solk identified the authors as "orthopedic surgeons," and to the question, "Do you recognize Key and Conwell?," answered, "Yes, they are very, very capable."

He said that he had read "these authors" but not "that volume." (There is more than one edition of the treatise.) Over objection by defendant's counsel, the cross-examiner was permitted to require Dr. Solk to read excerpts from the treatise. Then Dr. Solk summarized what he had read as saying "that you can have a whiplashing injury to the cord, to the cervical spine and the symptoms complained of in some future date * * * up to a two-year period. They said that." From the context of a question later put to him, we gather that what Dr. Solk read was the statement by the authors that "The question of injury, whether recent or remote, is frequently slurred over by the patient for the reason that painful symptoms do not develop until some time after, a good many times years after, the injury occurs." Dr. Solk said that he did "not fully" agree with this opinion.

Dr. Reilly characterized the Key and Conwell treatise as "an excellent textbook," "one of the textbooks I have in my library." (The record mentions Gay & Abbott as the work inquired about, but from the context it is clear that Key and Conwell was intended. At the first trial, although not at the second, Dr. Reilly testified that Key and Conwell was one of the authorities upon which he based his opinion.) Dr. Reilly acknowledged that he had read the book and that it contained the statement that a good many times the symptoms of whiplash do not show up for years after the injury. He said that he agreed with that statement "but not in its entirety," "I agree in general with the conclusions, but not the whole statement."

The cross-examiner also attempted to cross-examine Dr. Solk upon the basis of a paper by Doctors James R. Gay and Kenneth H. Abbott appearing in an issue of the *Journal of the American Medical Association.* Appellant also asserts error in this respect, but as the trial judge sustained his objections to all the significant questions put by the cross-examiner in this connection we perceive no ground for the prejudice claimed. The point argued as to the use of the treatises will therefore be decided in relation to the Key and Conwell book alone.

The trial judge permitted the cross-examiner's action over defendant's objection because, as the judge stated during one colloquy, each medical expert "recognized these gentlemen as an authority" and because, as he several times admonished the jury during the examinations, the cross-examiner was utilizing the treatise for the purpose of "questioning his [the witness's] judgment and his credibility": "May I say to the jury that any matter that has been read from this author-ity, from the book, has no probative force as a proven state-ment of the statements that are made in the book. They are only used for the purpose of cross-examination of this wit-ness by counsel for the plaintiff insofar as it may or may not affect the credibility in your minds as to his opinion; that is the only purpose of the reading from the volume. It is not proof as to the facts of this case, or his opinion." And, again, "I will instruct the jury now, as I did heretofore. Any expression of opinion or statement in these articles is not to be taken by you as proof of those conditions. It is merely given as to what may or may not affect the witness's credi-bility." And, finally, during the examination of Dr. Reilly, "My first instructions go to the same discussion of these different authorities. They are merely for the purpose, insofar as they may, to affect the credibility of the witness, as an expert witness. Only for that purpose and that purpose alone is it offered and considered."

The question to be decided is thus one of very narrow com-pass and may be phrased as follows: May the attention of an expert witness be called in the course of cross-examination to statements in conflict with his testimony contained in rele-vant scientific works not relied upon by him to support his opinion but which he recognizes as authoritative? See *Lawrence v. Nutter*, 203 *F*. *2d* 540 (4 *Cir*. 1953). The opinion of the Appellate Division goes beyond this limited aspect of the "learned treatises" exception to the hearsay rule. That opinion deals expansively with the exception in its broad form as it appears at *page* 165 of the *Report of the Supreme Court's Committee on the Revision of the Law of Evidence*, dated May 25, 1955. But that report has not

yet been acted upon and, apart from considerations which ordinarily suggest in every case a decision confined to the issues presented on appeal, it is particularly appropriate in this instance that our opinion be restrained within the necessities of the case. This we shall do, leaving all other aspects of the "learned treatises" exception to the event of final action upon the report, except as meanwhile their treatment may be compelled in cases which present them as issues for decision.

Where the contents of a treatise is offered as substantive evidence in the case, the general rule has been to deny admission principally upon the ground that the offer of the contents in evidence purports to employ testimonially a statement out of court by a person not subjected to cross-examination. The decisions of our former Court of Errors and Appeals in *Kingsley v. Delaware, L. & W. R. Co.*, 81 *N. J. L.* 536 (1911), and *New Jersey Zinc & Iron Co. v. Lehigh Zinc & Iron Co.*, 59 *N. J. L.* 189 (1896), instance the general rule against admission of learned treatises as a substantive medium of proof of the facts they set forth. In both cases texts were offered in evidence to buttress the opinion of an expert witness testifying in behalf of the party making the offer.

But where, as in the instant case, the cross-examiner directs the attention of the expert witness to the contents of treatises expressing an opinion at variance with the opinion of the witness, and does so, not to prove the contrary opinion but merely to call into question the weight to be attached by the fact finder to the opinion of the witness, the law of this State allows such use of the treatise even if not relied upon by the witness in arriving at his opinion, provided the witness admits that the treatise is a recognized and standard authority on the subject. This was decided in *New Jersey Zinc & Iron Co. v. Lehigh Zinc & Iron Co., supra*. That case was tried before Justice Magie, later Chief Justice and Chancellor. The plaintiff offered several witnesses to testify as experts as to what minerals were available or useful for the production of zinc. Two of the experts were a Mr. Cook

and a Professor Williams. Upon Williams' cross-examination he was asked whether he knew *Whitney's Metallic Wealth of the United States* and objection was made that the witness had not said he relied upon that work for his opinion. The following colloquy appears at pages 563 to 566 of the trial record printed in volume 208 of Records of the Court of Errors and Appeals (1896) :

"The cross-examiner :

Q. Do you remember Whitney's Metallic Wealth of the United States?

A. Yes Sir. I know that quite well.

Q. Is it considered a standard book and referred to as such generally ?

A. Yes Sir, it is a standard work.

Q. And referred to as such by scientific men?

A. Yes, sir.

Plaintiff's counsel: I object, it has not been spoken of or referred to by this witness at all.

Justice Magie : If it is a standard work, and he is acquainted with it, and it contains something that ought to have modified his opinion, I think it can be shown.

Plaintiff's counsel: [The treatise is] not under oath, and it is entirely incompetent—He did not give Whitney as one of the grounds of his opinion. Whitney is still living and can be called.

Justice Magie : The evidence will not be available for any purpose except to affect the opinion of this witness. I shall tell the jury that what is read to them must not be considered by them as proving the facts stated therein, or anything of the sort, because it cannot be proved in that way.

Plaintiff's counsel: That is the reason we object to it; it is not competent.

Justice Magie : *It is competent to affect the expression of opinion by the witness. If he admits this is a standard work, and he ought to have read something in it which will affect his opinion, I shall have to admit it in that way.*" (Emphasis supplied)

The cross-examiner then confronted Professor Williams with statements read from Whitney which expressed an opinion contrary to the opinion which the professor gave on his direct examination.

The same procedure was followed, with the same result, during the cross-examination of plaintiff's witness Cook, who also was asked to say what authorities he had relied upon. During his re-direct examination plaintiff's counsel

sought to put in evidence excerpts from the treatises upon which Cook had said he relied. Justice Magie refused to allow this to be done.

Both rulings of Justice Magie were assigned as error upon the appeal to the former Court of Errors and Appeals. The seventeenth assignment of error (*p. 1838 of volume 208, supra*) was that the "Justice permitted some of plaintiff's witnesses on their cross-examination to be asked whether certain text books upon which they had not relied as authorities for their opinions * * * did not make certain statements contrary to the opinions of the witnesses." The fourth assignment of error (*p. 1834*) was that the "Justice refused to allow plaintiff to show upon the re-direct examination of certain of its witnesses, what is said by authors concerning the ores in dispute in treatises upon the subject, when said witnesses had been upon their cross-examination required by the defendant to specify the names of these authors relied on by them for their opinions."

The high court affirmed the judgment for the defendant and found no merit in either assignment of error. The rule quoted from 7 *Am. & Eng. Encyc. L.* 513 was approved and adopted, *viz.*, "Books of science are inadmissible in evidence to prove the opinion contained in them; but, if a witness refers to them as an authority, they may be received for the purpose of contradicting him." It was expressly held that "the course adopted at the trial was right" within this principle. The exclusion of the books on which Cook relied was proper since offered by the party producing him not to contradict but to buttress his testimony. And the ruling as to the cross-examination of Professor Williams based upon Whitney's work not relied upon by the witness was also correct ("The rule covers also the admission of *Whitney's Metallic Wealth of the United States,* on the cross-examination of Mr. Williams," 59 *N. J. L.*, at *page* 192), because having been acknowledged by the witness to be a standard authority it was within the language of the principle "if a witness *refers to them as an authority* they may be received for the purpose of contradicting him."

Thus the law settled by the former high court in the *New Jersey Zinc & Iron Co.* case was this: Experts may state what books they relied on in forming their opinions but may not give the contents unless these are asked for in cross-examination (in which case "the treatise may be read to show that it does not contain \* \* \* corroboration, on the principle of discrediting a witness by showing misstatements on a material point," 6 *Wigmore, Evidence* (3d ed.), sec. 1700, *p.* 19), and the witness may also be cross-examined as to whether he admits other books to be recognized and standard authorities, and upon such admission may be confronted with statements in those books. The statements from such books and documents may be thus admitted on the cross-examination of the witness either when the authorities have been cited by him or are admitted by him to be recognized and standard authorities on the subject. Even then the work itself is not to be admitted in evidence, but the statements only may be read by the cross-examiner so far as they are material and have first been brought to the attention of the witness. It is plain then that what was done in the instant case was within the cover of this principle.

It is true that the later decision of the former Supreme Court in *State v. Mac Rorie*, 86 *N. J. L.* 401, 405 (1914), phrases the principle in this wise,—"It is only when a witness refers to them as an authority *for his own opinions* that they are receivable in evidence, and then only for the purpose of contradicting him." The limitation to works cited by the witness as authority "for his own opinions" is of course contrary to the principle as stated and applied in the *New Jersey Zinc & Iron Co.* case, to which the Supreme Court referred as its authority. As a statement of the law it is therefore to be disregarded. The decision was, however, right on the facts. The medical work to which the cross-examiner referred was neither cited by the medical expert as support for his opinion nor admitted by him to be a recognized and standard work.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices WACHENFELD, JACOBS and BRENNAN—4.

*For reversal*—Justices HEHER, OLIPHANT and BURLING—3.