STENE, Appellant v. HILLGREN, Respondent

(88 N.W.2d 109)

(File No. 9684. Opinion filed February 20, 1958)

**Gene E. Pruitt,** Sioux Falls, for Plaintiff and Appellant.

**James O. Berdahl,** Sioux Falls, for Defendant and Respondent.

SMITH, J. This action is for damages resulting from an assault and battery. The jury awarded plaintiff damages in the sum of $938. In response to an application by defendant the trial court vacated the verdict and granted a new trial. The order was based upon the ground that the jury had awarded excessive damages under the influence of passion or prejudice. Cf. SDC 33.1605(5). Whether, in so doing, the trial court abused its discretion is the sole issue before us.

A building located in Sioux Falls, known as the Nordic Hall, is owned by a corporation and is managed by defendant Ralph O. Hillgren. The Norse Glee Club, by arrangement of long standing, has used the banquet room on each Monday evening. The Glee Club agreed to permit a Mr. McCroskey, owner of a nearby bar, to use the banquet hall for a private party on Monday evening, December 31, 1956. Mr. McCroskey had used the hall for a like purpose the year before. Because of the intoxicants consumed at that party and of the condition in which the premises were left, the defendant was opposed to further use of the hall by Mr. McCroskey. When he learned on the afternoon of December 31, 1956, of the proposed further use by Mr. McCroskey he complained to two officers of the building corporation and to the police. The officers of the corporation told him not to worry.

At about 8:30 that evening, plaintiff, a member of the Glee Club, and Mr. Juel, its president, went to the building for the purpose of admitting Mr. McCroskey and his helpers. Defendant Hillgren was on hand and stated that the building could not be used by McCroskey. He said, "* * * we did not want his kind of business in Nordic Hall". Plaintiff ignored defendant and admitted Mc-Croskey and his helpers. Their supplies included about thirty cases of beer. Defendant finally passed by plaintiff as he departed and said, "I guess you win this round."

Plaintiff left the building and did not return until 12:30 when he and his wife, together with some friends, came there as Mr. McCroskey's guests. Dancing was then in progress, and coffee and doughnuts were being served. Beer had been served during the evening and liquor which

guests brought with them had been consumed. Plaintiff brought a pint of whiskey with him when he returned at 12:30 and drank a little more than one-fourth of it.

At some time before 2:30 defendant returned. Only about twenty guests were then present. Defendant thought they were "severely under the influence of liquor". He called the police and a Lieut. Renli came to the building. Defendant testified, "I told Renli that the Norse Glee Club had illegally sub-let this place and I wanted it clear. These people are clearly trespassers, and they were drunk and I wanted them removed from the place." After Renli had viewed the situation he, plaintiff and defendant retired to the kitchen. Their conference resulted in a refusal by Renli to do anything. According to Renli defendant Hillgren then said "I am manager of this place and you are going to have to leave and he grabbed a hold of Mr. Stene's arm and attempted to pull him toward the back door * * * and they fell down, Mr. Stene falling on top of Hillgren, or partially on top of Hillgren and Mr. Stene bumped his head on a—I took it to be a wash sink—cut his head near his eye, and blood was running down his face and on his clothes, * * * and I went out and told everyone to leave, which they did. " Defendant testified "We were moving toward the rear of the kitchen and Stene was somewhat—was in extreme intoxicated condition. I saw the slop on the floor and I didn't think he could stand on his own feet and I grabbed him by the arm."

Plaintiff received a deep cut about three-quarters of an inch long near one eye as the result of striking the corner of the sink as he fell. After he arose from the floor, he cleaned the blood from his face and clothes and then left for home. Except for some soreness in his back which persisted for about a week, plaintiff suffered no other injury and within a few days he had fully recovered. He did not see a doctor. Cleaning removed the blood stain from his clothes.

At the outset we are compelled to determine the nature of the damages awarded plaintiff by the jury.

In connection with instructions which dealt at length

with compensatory and exemplary damages, the court submitted two forms of verdict. Of the plaintiff's verdict it said, "If you find for the plaintiff, you will insert therein, in the blank left for that purpose, the actual damages, if any, as determined by you, and if you find that he is entitled to punitive or exemplary damages you will insert the amount thereof, if any, as determined by you." The form as completed by the jury includes the following: "* * * find for the plaintiff upon all the issues in the case, and against the defendant and assess plaintiff's actual damages at $938 Dollars, and punitive damages in the amount of $————." After the verdict was read these proceedings were had. "The Court: I will ask the Foreman of the jury this question: did you consider the actual damages separate from the exemplary or punitive damages? Do you understand me? The Foreman: Yes, we do, but we didn't. The Court: You just found the total amount of plaintiff's damages as specified in the verdict? The Foreman: Yes."

Such uncertainty as exists as to the nature of the assessment of damages stems from the colloquy between the court and the foreman of the jury rather than from the verdict. In words of precise meaning the verdict awards $938 as actual damages and $———— as punitive damages. After its questioning and the foreman's answer of "yes" to the inquiry, "you just found the total amount of plaintiff's damages **as specified in the verdict?**" the court did not send the jury out to make separate awards of the actual and punitive damages in accordance with the terms of the instructions previously given; it received and entered the verdict. It is noteworthy that neither counsel requested the court to require the jury to correct their verdict. It is our holding that the explicit terms of the verdict, as received and entered, are controlling. It is an award of compensatory damages in the amount of $938.

 In actions of this character, because of the absence of an accurate means of measuring the detriment suffered by the victim of the assault, the law, from necessity, leaves the assessment of damages to the unbiased judgment and common sense of the jury, and accords to the jury a broad discretion in the premises. However, the

finding of the jury is subject to review by the trial court in connection with a motion for a new trial. To vacate such a verdict merely because deemed somewhat excessive is not within the power of a trial court. The damages allowed must be so disproportionate to the detriment suffered as to warrant a conclusion that the verdict was influenced by passion or prejudice to justify a court in granting a new trial grounded on the excessiveness of the award of damages. SDC 33.1605(5); Hayne, New Trial and Appeal, Rev.Ed., § 95; 6 C.J.S. Assault and Battery, § 56 e, p. 907. As a participant in the trial, and thus peculiarly qualified to sense whether an excessive verdict is in fact a product of passion or prejudice, the trial court is clothed with a latitude of discretion in passing on such a motion for new trial, and an appellate court will not disturb its decision except for clear abuse. Hayne, New Trial and Appeal, Rev.Ed., § 95, p. 461; and cf. Gamble v. Keyes, 39 S.D. 592, 601, 166 N.W. 134, 136; Tufty v. Sioux Transit Co., 70 S.D. 352, 357, 17 N.W.2d 700, 702.

The trial court was justified in believing plaintiff's injuries to be inconsequential. He neither lost time from his business nor was he put to more than a few dollars of expense. Viewing all of the elements of detriment including such humiliation, as in the peculiar circumstances it would be reasonable for the court to think plaintiff suffered, it is our considered judgment that the trial court was warranted in judging the verdict to be extremely excessive. In another respect the record afforded it room for concluding the jury to have become prejudiced against defendant. He not only left the impression with the jury that he was somewhat of an extremist in his opposition to the use of intoxicants, but he made it very clear that, in his opinion, neither plaintiff's host nor his New Year's party measured up to the standards of Nordic Hall. In the circumstances, it is our view and holding we cannot say the ruling of the trial court constituted an abuse of discretion.

The order of the trial court is affirmed.

All the Judges concur.