ROSS, Respondent v. FOSS, Appellant

(92 N.W.2d 147)

(File No. 9680. Opinion filed September 15, 1958)

Rehearing denied October 22, 1958.

**Woods, Fuller, Shultz & Smith, J. B. Shultz,** Sioux Falls, for Defendant and Appellant.

**Davenport, Evans, Hurwitz & Smith, Robert C. Heege,** Sioux Falls, for Plaintiff and Respondent.

RENTTO, P. J. This action was brought by plaintiff to recover damages for a whiplash injury received in an automobile collision on July 27, 1956, near the inter-

section of South Minnesota Avenue and 18th Street in Sioux Falls, South Dakota. She sought damages in the sum of $25,000. A verdict of $8,690 was returned in her favor on May 21, 1957. Defendant appeals from the judgment entered thereon and from the order denying her motion for a new trial.

On this appeal defendant's principal contentions are that the trial court erred to her prejudice in the following respects:

(1) In not permitting the use of medical treatises in her cross-examination of Dr. Walter Van Demark, an orthopedic physician who testified for plaintiff as a medical expert.

(2) In permitting plaintiff to testify as to the amount she paid for medications without proof of the reasonableness of such charge.

(3) In refusing a requested instruction as to damages.

Defendant's motion for a new trial claimed that these and other errors in law were committed at the trial and and that the verdict was excessive, appearing to have been given under the influence of passion and prejudice.

During cross-examination of Dr. Van Demark, defendant's counsel proposed to read to the witness an excerpt from an article written by Dr. Nicholas Gotten, a neurosurgeon of Memphis, Tennessee, appearing in the October 27, 1956 issue of the Journal of the American Medical Association, concerning a study of cases involving whiplash injuries made by the Department of Neurology of the University of Texas. This is the excerpt:

"The conclusion we draw from this study of one hundred patients whose cases have been to a great extent freed of litigation or compensation claims, is that the emotional factor plays an important part in the ability of the physician to obtain a satisfactory result from treatment. There seems every reason to believe that the personal reaction of the patient to his injury complicated the evalu-

ation of his symptoms, treatment and recovery. The apprehension, nervous tension and anxiety that these patients developed subsequent to the injury as a result of fear for future health and as a result of the litigation tended to accentuate the formation of a profound posttraumatic neurosis. This profound emotional reaction depended to a great extent upon the personality pattern of the patient as well as the degree of his physical injury. Once the psycho-neurotic symptoms had developed, they persisted for many months and were refractory to treatment, being finally resolved to a great extent by a settlement of the litigation."

He further proposed to ask the witness whether he agreed with it. Objection to the proposed cross-examination was sustained.

He also proposed to read to the witness a statement made by Dr. G. W. N. Eggers of the Department of Surgery, Orthopedic Division of the University of Texas, Medical Branch, Galveston, Texas, in his article, "Whiplash Injuries" presented at a Medical-Legal Forum at Houston, Texas, on August 24, 1956, and ask him whether he agreed with it. This is the statement:

"The medical-legal aspect of practically all whiplash injuries accounts for the tendency of those involved to prolong treatment. Extended treatment is, of course, undesirable because of the mental attitude that the patient may assume. When this situation is present, the responses are usually evident to the physician but very often difficult to prove. The prolonged use of cervical collars is an example of the type of situation. After all, the collars really do not accomplish much because the patients move the neck inside the collar. All apparatus should be discarded early in whiplash injuries."

This likewise was not permitted. Cases concerning this type of injury are appearing with increasing frequency in the decisions. They present many new and difficult medical-

legal problems. One of the more recent dissertations in this field appears in Vol. 12, Arkansas Law Review, p. 76.

■ The general rule is that medical books or treatises are not admissible to prove the truth of the statements therein contained. Brady v. Shirley, 14 S.D.447, 85 N. W. 1002; 32 C.J.S. Evidence § 573; 58 Am.Jur., Witnesses, §§ 839 and 846; Wigmore, Evidence, 3d Ed. § 1700; McCormick, Evidence,§ 296; Annotation, 82 A.L.R. 440. To hold otherwise would allow testimonial use of statements made out of court by a person not subjected to cross-examination. However, there are situations where medical books may be used in cross-examination of a medical witness for the purpose of discrediting him. Annotation, 60 A.L.R.2d 77. In passing it is interesting to note that Rule 529 of the Model Code of Evidence proposes basic changes in this area of the law.

■ The cases seem to be in substantial accord that books may be used on the cross-examination of such witness when he admittedly has used the treatise in giving his testimony. It is clear that in this situation it is proper to show that the work he admits he relied on discredits his testimony. There are other situations in which the witness in arriving at his opinion has not relied on any specific book but bases his opinion in a general way on all of his study and experience. In these situations there is a marked and sometimes confusing divergence in the cases.

Some of the cases state that under such circumstances books may be used in the cross-examination of the witness for the purpose of contradicting his testimony if it is recognized by him as an authority upon the subject as to which he has given an opinion. People v. Feldman, 299 N.Y. 153, 85 N.E.2d 913; Ruth v. Fenchel, 21 N.J. 171, 121 A.2d 373; Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, 13 A.L.R.2d 1; Lawrence v. Nutter, 4 Cir., 203 F.2d 540; Zubryski v. Minneapolis Street Ry. Co., 243 Minn. 450, 68 N.W.2d 489. However, there are cases which under these same circumstances allow the use of a standard authority in the cross-examination even though the witness does not recognize the writing as such. These cases seem to allow the authoritativeness of the book to be established by other means. Reilly v. Pinkus, 338 U.S.

269, 70 S.Ct. 110, 94 L.Ed. 63; Dolcin Corp. v. Federal Trade Commission, 94 U.S.App.D.C. 247, 219 F.2d 742; Garfield Memorial Hospital v. Marshall, 92 U.S.App.D.C. 234, 204 F.2d 721, 37 A.L.R.2d 1270. Farmers Union Federated Co-op. Shipping Ass'n v. McChesney, 8 Cir., 251 F.2d 441. See, also, Reck v. Pacific-Atlantic S. S. Co., 2 Cir., 180 F.2d 866.

■ The author of the annotation in 60 A.L.R.2d at page 79 distinguishes the lines of authority thus:

> "(1) many cases hold that the cross-examiner may use only those treatises which the expert witness has specifically cited as supporting his opinion; (2) other courts have held that where the expert has relied generally or specifically upon the authorities, he may be attacked upon the basis of authorities which are not necessarily the same as those he has himself used; (3) a third group of cases take the view that the expert may be examined upon the basis of treatises which he has himself recognized as having authoritative status, whether or not he relied thereon in forming his opinion; while (4), there are many cases recognizing that the cross-examiner may use treatises the authority of which is established in any acceptable manner, to test the qualifications of the witness regardless of whether that witness has relied upon or recognized the treatise."

In the circumstances of this case we are not called on to choose between these rules. That question is not presented or argued. To make such choice in this litigation would be but an academic diversion. Under any of these rules, if the witness has not relied on or cited the treatise as supporting his opinion, it may not be used on his cross-examination unless its authoritative status is established either by his admission or otherwise. This is an essential element of the foundation that must be laid for the book before its use is proper.

■ Pertaining to the article by Dr. Gotten the record made on the examination of Dr. Van Demark is thus:

> "Q. Now, Doctor, are you familiar with the

recent study of whiplash injuries which was made by the Department of Neurology of the University of Texas where their study is reported in an article appearing on Page 865 of the October 27, 1956 issue of the Journal of the American Medical Association? A. I looked at it when it came out. I haven't read it recently.

"Q. You recall that that article treats with a study that was made of one hundred patients who had sustained whiplash injuries in the vicinity of Memphis, Tennessee? A. I didn't remember the name of the town.

"Q. And the study was made about these patients after they had received awards or settlements from the person responsible for their injury. Do you remember that? A. I remember that.

\* \* \*

"Q. Do you get the Journal of the American Medical Society? A. I do.

"Q. Do you read it? A. Yes, sir.

"Q. Now in making a diagnosis and in treating a patient is it not true that you rely on all of the training, the studying and reading and the practical experience that you have up to the time that you make the diagnosis? A. I certainly try to.

"Q. And you relied on that accumulated knowledge at the time that you made this diagnosis as to Mrs. Ross? A. Yes, sir."

From this factual basis it does not appear that the witness relied on the Gotten article. Nor does it establish the article involved as an authority. Accordingly, there was no foundation for the proposed cross-examination. In view of this we do not reach the question of whether the article contradicts the testimony of Dr. Van Demark.

■ On direct examination Dr. Van Demark had testified that the wearing of a cervical collar was an accepted method of treatment for this type of neck injury and that plaintiff would have to wear it for about a year after the trial. The paper on "Whiplash Injuries" by Dr. Eggers

is contradictory of this opinion but no foundation was laid for its use in the proposed cross-examination. The only information in the record concerning it is contained in counsel's proposed question. Obviously its authoritative status is not established nor is there any showing that the witness ever saw or heard of the article or its author. Clearly he could not have relied thereon as supporting his opinion.

In her argument in this court the appellant points out that the objections to these questions did not specify the lack of foundation as a ground. The record supports this observation. The objection was a general one and in addition stated that the question called for hearsay testimony. In view of the fact that the objections were sustained they were sufficient even though the ground named was untenable since a tenable one existed. Wigmore, supra, § 18, p. 342. See, also, Voegele v. Tschirley, 76 S.D. 509, 81 N.E.2d 604. While counsel is bound by the grounds stated in his objection if the same is overruled, the court in sustaining an objection is not bound by the grounds stated therein.

Plaintiff was asked to state the amount she had paid for medications. To this the defendant objected thus: "I think the test of that is whether or not the charge made is reasonable; not the amount paid." This was overruled. The trial court ruled correctly. In Ellwein v. Town of Roscoe, 42 S.D. 298, 174 N.W. 748, 750, this court said:

> "Respondent's evidence as to what she paid was competent and was properly received. If she failed to prove by further testimony the reasonableness of these payments, it constituted a mere failure of proof, which rendered immaterial the proof as to what she had paid."

See, also, Kolka v. Jones, 6 N.D. 461, 71 N.W. 558. The holding in Klingaman v. Fish & Hunter Co., 19 S.D. 139, 102 N.W. 601, seems to be at odds with the quoted rule. To that extent it is overruled.

Defendant also complains in this regard that the court did not instruct the jury that the payment of the

charge in question was no evidence of its reasonableness. However, since such instruction was not requested, error may not be predicated on the court's failure to so instruct. Kirkegaard v. City of Sioux Falls, 69 S.D. 214, 8 N.W.2d 862.

The defendant's complaint concerning the instruction on damages must be examined against this background: Plaintiff did not claim any damages by reason of permanent injuries but did ask compensation because of continuing detriment. These consisted of pain and suffering which she alleged would continue and future medical care. On direct examination Dr. Van Demark was asked if from a medical standpoint he could say with reasonable certainty that the plaintiff would suffer permanent injuries by reason of the accident. His answer was that he could state a probability but not with reasonable certainty. He was not permitted to state the probability. However, he did testify without objection that it would be two years from the time of the injury before Mrs. Ross would reach the ultimate of her recovery and that during the remainder of that time she would have to continue her diathermy and traction treatments, which were painful and uncomfortable, and wear a cervical collar for a year.

Defendant does not complain of the instruction given concerning the awarding of damages. She did, however, request this additional instruction:

> "You are instructed that the evidence in this case does not show with reasonable certainty that the plaintiff has suffered a permanent injury; you, therefore, in the event you find for the plaintiff must not consider any element of permanent injury in determining damages to be awarded."

The denial of this request is assigned and urged as being erroneous. We do not so regard it. Orrison v. City of Rapid City, 76 S.D. 145, 74 N.W.2d 489. She made no claim for damages because of permanent injuries nor was any evidence thereof admitted. The requested instruction in a negative way presented a matter which was outside the issues and without support in the evidence. The court

correctly instructed concerning the issue of damage as it was framed in the pleadings and supported by the evidence. That was the extent of its duty.

 If the request was intended as cautionary in purpose, because of questions asked the witness about permanent injuries, and that seems to have been defendant's position, then whether it was given or not was addressed to the court's discretion. On this record we cannot say that the court's action was an abuse of that discretion.

 The question of excessive damages necessitates a further statement of the record. Plaintiff was employed as office manager for a finance company in Sioux Falls. She had held such position for about 8 years and was paid a stipulated monthly salary. She maintained a home in Sioux Falls for herself and her two sons, ages 12 and 9. Prior to her injuries she was able to do her work and care for her home and her boys. Since the injuries she has had to have help in her home—either her mother, when she was available, or employ other persons. Since that time she has been able to do her office work but with difficulty and discomfort. The daily treatments at her doctor's office require her to be away from her work about an hour and a half. Also the injury has reduced her work efficiency about 50%. Because of these factors she has to put in longer hours than before to carry out her assigned duties. Consequently she isn't able to devote as much time to her home or her boys as she formerly did.

While she had suffered no loss of earnings, to the date of the trial she had spent about $1500 for medical care, treatment and other expenses. Under the evidence most favorable to plaintiff the jury could find that the cost of continuing such treatments during the remaining period of her recovery would be about the same amount. In addition to the traction and diathermy treatments administered at her doctor's office she also is required to undergo traction treatments in her home each day. While the frequency of these will diminish they will be required during the remainder of her recovery. Since shortly after her injury she has had to wear a cervical collar continuously. This includes the time when she is sleeping. She

must continue to do this for a year after the trial. In addition to the pain and discomfort of her treatments which she described as severe at times she has suffered considerable pain otherwise and this is expected to continue in a lesser degree during the rest of her recovery period.

We think this award a generous one. However, that is immaterial because more than mere generosity must be made to appear before a court is justified in disturbing it. This it may do only if "* * * it is so extremely excessive as to justify the inference or conclusion that it is the product of corruption, passion or prejudice." Tufty v. Sioux Transit Co., 70 S.D. 352, 17 N.W.2d 700, 702. In this connection the court may consider occurrences in the course of the trial that may have caused the jury to be biased or prejudiced. Stene v. Hillgren, 77 S.D. 165, 88 N.W.2d 109. Our review of this record reveals no occurrences of that type, nor do we consider the verdict so excessive as to warrant an inference or conclusion that it is tainted with corruption, passion or prejudice.

There are no accurate means of monetarily evaluating the detriment caused plaintiff by her pain, suffering and discomfort. Of necessity the amount of damages to be awarded therefor is largely left to the good judgment of the jury. Larum v. Butler, 42 S.D. 30, 172 N.W. 778. And when courts scrutinize the exercise of that judgment they must keep in mind the reduced value of our dollar. In passing on the question of whether such award is legally excessive the trial judge exercises a judicial discretion. Because of his participation in the trial he is in a better position than are we to make this determination. For this reason the Tufty case admonishes us to act with reluctance in disturbing an award approved by the trial judge. When this award is viewed in the light of applicable principles we are unable to say that the trial court abused its discretion in holding the verdict not excessive.

We have considered the other matters assigned and are of the view that if the court erred therein defendant was not prejudiced thereby.

Affirmed.

All the Judges concur.