BYRE, Respondent v. WIECZOREK, Appellant

(190 N.W.2d 57)

(File No. 10882. Opinion filed September 2, 1971)

Order denying petition for rehearing 11-5-71

**Morgan & Fuller,** Mitchell, for plaintiff and respondent.

**Johnson & Johnson,** Gregory, **John W. Keller,** Chamberlain, for defendant and appellant.

BIEGELMEIER, Judge.

The plaintiff brought this action, sounding in tort, for damages against the defendant because of a battery on his person that occurred on May 10, 1969. The case was tried to a jury that returned a verdict on that claim in favor of the plaintiff of $54,873.83, and defendant appeals. Defendant contends the verdict was so excessive as to clearly indicate it was the result of prejudice or passion on the part of the jury and the evidence is insufficient to sustain it. A motion for a new trial on these grounds was made and denied and is assigned as error on appeal.

The plaintiff was licensed as a commercial pilot in 1958 by the Federal Aeronautics Administration. In March 1969 plaintiff and defendant entered into an oral agreement whereby the plaintiff was employed by the defendant to pilot the latter's Gruman Ag Cat airplane in defendant's aerial spraying business. As the business is seasonal, when the plaintiff was not flying he was expected to work upon the defendant's farms.

On May 10, 1969, the defendant being dissatisfied with the way the business was going and blaming the plaintiff therefor, in a fit of temper criticized the plaintiff's work, whereupon name calling took place and curses were exchanged. The defendant discharged the plaintiff from his employment. The plaintiff seeking to break off the conversation turned to walk away, at which time the defendant struck the plaintiff on the jaw with his fist. As a result of the blow plaintiff's jaw was fractured requiring eight days hospitalization. Cold and hot packs were applied to reduce the swelling; a plastic and later a foam rubber brace was tried to hold the jaw together. On May 15th a dentist at his office using a local anesthetic tied wires to plaintiff's teeth; these wires ran

through the gums; rubber bands were attached to the wires to hold the jaw shut for the bones to knit and to properly mesh the teeth. On May 29th the plaintiff was able to exercise his jaw three times a day at meal time. Up until that time he was fed a liquid diet between his teeth. The jaw was restored to normal use.

There was evidence of pain and discomfort from the injuries and treatment; of earache and ringing in his ears and of nausea and dizziness, especially when riding in a car or a plane. The blow to plaintiff's left ear, according to an expert's testimony, caused a 15% loss of hearing in plaintiff's left ear, but as a person hears with both ears, on the basis of the "whole man impairment" it would be only a 1% loss.

However, the evidence further showed the ear injury developed a condition of permanent vertigo. Plaintiff testified that under F.A.A. regulations a pilot so affected is required to remove himself from commercial flying status and, while his license was not canceled, his career as a commercial pilot was rendered useless as long as that condition exists. His dizziness interfered with labor on a scaffold or similar heights. Plaintiff was unable to work until sometime in August or September when he was advised he could start doing work that wouldn't involve driving a car and he inquired without success of one parts supply business and made some other efforts to obtain employment. In December he purchased and did custom work with a hay grinder until April 1970 when he obtained permanent employment with a contractor at $3 an hour. Plaintiff was 38 years old and had a life expectancy of 33 years.

The evidence showed plaintiff ran a cow-calf ranch, though year by year from 1964 through 1967 he devoted more time to flying. He moved to Chamberlain and went into the aviation business in the spring of 1967, during which year he continued ranching. That year the business was charter flying, student instruction, rental and gas sales; in 1968 it was extended to crop spraying.

In his brief defendant lists the net income plaintiff derived from his flying operations from 1964 through 1968

and states the average is $1,304 and asserts plaintiff's earnings as a carpenter and his grinding business are more than the previous flying operations. It is difficult to reconcile plaintiff's testimony[1] of his earnings including 1969. Some years there were gains, in others losses. It is as difficult to evaluate his testimony as to the Flying Service net income of $1,699.40 in 1969 with a Byre Aviation, Inc. (of which plaintiff and his wife were substantially the owners) loss of $1,434.21 in the same year or his 1968 net income of $1,285.98 from gross receipts of $24,881.57. Plaintiff had been employed for $500 a month salary plus a 10% commission or $1.25 an acre on chemical applied.[2] Though this employment lasted only about a month, it was some evidence of his earning capacity.

When the sufficiency of the evidence to support a verdict is challenged the court must view the evidence in the light most favorable to the successful party and he should have the benefit of every reasonable inference that can be drawn therefrom. Peters v. Hoisington, 72 S.D. 542, 37 N.W.2d 410. SDCL 15-6-59(a) (5) provides as a cause for which a new trial may be granted, "Excessive or inadequate damages appearing to have been given under the influence of passion or prejudice". The test to be employed in determining that question is contained in Schuler v. City of Mobridge, 44 S.D. 488, 184 N.W. 281, and quoted in Brewer v. Mattern, 85 S.D. 356, 182 N.W.2d 327, 332-333, as:

" 'The damages, therefore, must be so excessive as to strike mankind, at first blush, as being, beyond

---

1. These figures are from the testimony of plaintiff:

| YEAR | | GROSS | NET |
|------|--|-------|-----|
| 1964 | | $ 5,061.25 | $ 2,516.84 |
| 1965 | | 6,129.86 | 2,598.78 |
| 1966 | | 2,681.60 | —86.32 |
| 1967 | | 8,203.00 | 204.10 |
| 1968 | | 24,881.57 | 1,285.98 |
| | (Byre Av. Corp.) | | —457.22 |
| 1969 | | 3,658.83 or | |
| | | 7,546.25 | 1,699.40 |
| 1969 | (Byre Av. Corp.) | ? | —1,434.21 |

2. There was no evidence of the markup value of fertilizer applied.

·all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess.' "

The jury verdict is a substantial one even in this day of inflation and the reduced value of the dollar. See Ross v. Foss, 77 S.D. 358, 92 N.W.2d 147. By the same token courts should consider the increased interest rate that money will earn. Deducting plaintiff's medical expense of $789.83 and a $405.62 amount, hereafter mentioned, the jury verdict was for $54,000 actual damages.

█ Excluding the jury allowance for pain and suffering (which is not separated in the verdict), the present allowance for loss of earnings in the future is, or should be, the commuted or discount value. See Adams v. Deur, Iowa, 173 N.W.2d 100, 108, 114. There it is said that (1) life expectancy, (2) future earnings or income (or earnings lost), (3) prospective value of the dollar, and (4) expected interest rates are four of the five factors said to be considered in a damage action. The trial court here instructed as to the first two items; as no record or request was made for application of any other factor it is not presented as a trial error. Nevertheless, this court on appeal should give consideration to factors properly applicable in order to consider the reasonableness of the award and determine whether it exceeds the line that must be drawn. The principle allowing damages is that of compensation,[3] the ultimate purpose being to place the injured party in as favorable a position as though no wrong was committed. On the other hand, no rule of law should permit an injured party to receive more than has been lost as a result of some tortious act. Adams v. Deur, Iowa, 173 N.W.2d 100, 105. Another

---

3. Our statute SDCL 21-3-1 uses the phrase "the measure of damages, * .* * is the amount which will compensate for all .the detriment proximately caused thereby".

factor to be considered is the occupation in which plaintiff was engaged, that of crop spraying by airplane. Courts are mindful of this being an activity having a greater than average danger of accident and consequent injury or death which would shorten or limit plaintiff's future earnings. It is well known that insurance companies may refuse to insure or limit their coverage of persons so employed.

Plaintiff's complaints[4] alleged the battery was wilful and malicious and requested exemplary damages; the trial court submitted this issue to the jury by the instructions and a verdict thereon. The jury denied such damages and returned the verdict for actual damages only. Nevertheless, as is permitted in actions for exemplary damages defendant was interrogated about his property holdings and financial standing. That testimony showed he was in the farming, grain and crop spraying business; that he owned 1,700 acres of land, valued at about $200,000, farmed about 3,000 acres of which 2,200 was under plow. He owned several planes, one of which cost $84,000, stocks and bonds, land in Florida and other property of a net worth of over $500,000. It would be naive to assume that while the jury denied recovery of exemplary damages it did not enter into its discussions or the amount of the damages allowed.

The action and both complaints were for damages for the assault and battery. For some reason not shown in the

---

4. Plaintiff's original complaint of August 28, 1969, and his amended complaint of June 12, 1970, alleged damages:

| | 8-28-69 | 6-12-70 | |
|---|---|---|---|
| Pain for injuries | $50,000.00 | $150,000.00 | (includes loss of future earnings) |
| Loss of earnings | | 10,884.30 | |
| Earning capacity and medical expense | 10,735.03 | | |
| Exemplary damages | 100,000.00 | 25,000.00 | |
| Prayer for | $160,000.00 | $185,884.30 | |

record, without objection plaintiff introduced exhibits showing $30 for travel expense incurred and $375.62 due him as commission for fertilizer applied during his employment, or a total of $405.62 which his counsel agreed defendant owed plaintiff. The pleadings did not include these claims and they should not then have been injected in this action, but having done so there was no issue as to them and neither the instructions nor verdicts should have been encumbered by them.[5] We are mindful counsel did not object to this, yet the result was that instead of submitting a verdict for defendant, one for plaintiff for actual damages, and one for actual and exemplary damages as the ordinary action would include, no verdict for defendant was submitted. All three verdicts were for plaintiff—one for the "admitted damages in the sum of $405.62", the second for the $405.62 and "actual damage", and the third for the $405.62 and actual and exemplary damages.

Defendant claims the court erred in refusing a requested instruction advising the jury that there being no specified term during which the employment was to continue, either party could terminate it at any time. In answer to a question asking plaintiff if it was not correct there was no definite agreement as to how long the employment was to last, he testified, "No, there was no definite time." SDCL 60-4-4 provides that "An employment having no specified term may be terminated at the will of either party on notice to the other". After the altercation on May 10th, defendant told plaintiff " 'when you get through with this job and get the airplane back to Chamberlain, why, you're through' ", to which plaintiff replied, " 'Well, if that's the case, why, the airplane can stay right where it is and I'll find my own way home.' " Plaintiff did not fly defendant's plane back and returned on his uncle's plane.

Plaintiff's objection to this instruction was that defendant stated plaintiff was employed on a year-round basis and the quoted conversation on May 10th was not oral notice. We think it is clear from the evidence that the employment

5. RCP 15(a), also SDCL 15-6-15(a), permits amendment of pleadings.

was not for any definite time, that it was terminated on May 10th and the instruction should have been given. As to the time of employment, plaintiff's testimony there was "no definite time", as quoted, and "no definite term" at another place settled that fact. The reference to year-round was related to the flat $500 monthly rate for work done on the farm as distinguished from the commission paid when spray flying, and not related to the term of employment. Plaintiff understood he was discharged; his statement, in effect, was notice itself that he was then quitting and terminating his employment. Denial of the instruction put the parties in the position of arguing this to the jury without benefit of any court instruction to support defendant's theory. Conversely, plaintiff's counsel in argument to the jury stated plaintiff was hired year-round at a salary of $500 a month and, "I suggest to you that that's the measure by which you can determine what his loss of earnings were" and also, "He was unable to work until April of 1970, so that's eleven months times $500, plus there was a percentage involved." Plaintiff points out defendant did not make timely objection thereto or request further instruction and cannot present it as ground for a new trial citing Peters v. Hoisington, 72 S.D. 542, 37 N.W.2d 410, and other authorities that objection to counsel's argument must be made at the time of the argument. See Behseleck v. Andrus, 60 S.D. 204, 244 N.W. 268, 88 A.L.R. 596. Here that would have been futile as the trial court had refused defendant's instruction and it would only have highlighted that action to the jury and indicated the court's opinion defendant had no right to terminate the employment.

We are mindful of what was written in Stene v. Hillgren, 77 S.D. 165, 88 N.W.2d 109, and Ross v. Foss, 77 S.D. 358, 92 N.W.2d 147, of the reluctance of the court to disturb awards approved by the trial court, yet there is a time an appellate court must exercise its prerogative and duty to direct a new trial on the grounds asserted here under the facts as we have gleaned them from the record and set out in some detail. In the Ross opinion, the court speaking of the granting of a new trial by reason of the verdict being so excessive as to justify the inference it is the product of passion or prejudice, also wrote:

"In this connection the court may consider occurrences in the course of the trial that may have caused the jury to be biased or prejudiced." 77 S.D. at 369, 92 N.W.2d at 153, citing Stene v. Hillgren, supra.

See also the second Stene v. Hillgren opinion in 78 S.D. 1, 98 N.W.2d 156, where the court exercised its power of review in another manner by giving plaintiff an option to reduce the award or requiring a new trial.

Whether the refusal of the requested instruction alone was prejudicial error may be of some doubt, yet considering the argument made on the subject to the jury and the other record related, including the fact plaintiff recovered almost all the actual damages alleged in his first complaint, we conclude the trial court should have granted a new trial and abused its discretion in denying it.

 The jury determined two of the issues involved—that of liability of defendant for plaintiff's injuries and that they were not caused by malice—and so did not award exemplary damages; these determinations are not challenged nor affected by the error claimed here. As SDCL 15-6-59 (a) permits the granting of a new trial on all or "part of the issues" our entry will be the judgment and order denying a new trial are reversed and a new trial is granted limited to the issue of actual damages. Cf. Larson Elec. v. Vander Vorste, 81 S.D. 296, 134 N.W.2d 500, and Pexa v. Clark, 85 S.D. 37, 176 N.W.2d 497.

All the judges concur.