MYERS, Respondent v. QUENZER et al., Appellants

(110 N.W.2d 840)

(File Nos. 9905, 9906. Opinion filed October 5, 1961)

**Bangs, McCullen, Butler & Foye,** Rapid City, for Defendants and Appellants.

**Hanley, Costello & Porter,** Rapid City, for Plaintiffs and Respondents.

RENTTO, J.   The plaintiffs in these automobile collision cases are husband and wife. In his action Mr. Myers seeks recovery for injuries to his person and the car. Mrs. Myers claims damages for injuries to her person. The cases were consolidated for trial. At the conclusion of such proceedings, during which the jury and the trial judge viewed the scene of the accident, the trial court directed verdicts for both plaintiffs and submitted to the jury only the question of damages. Mr. Myers was awarded $650 and Mrs. Myers $7,500. Judgments were entered in these amounts from which the defendants appeal urging that the trial court erred in taking from the jury the question of their liability.

The accident happened about four o'clock in the afternoon of June 26, 1959 on U.S. numbered Highway 85, approximately eight miles north of Buffalo, South Dakota, on the south side of a hill or rise in the road. At that place the highway has a blacktop surface about 25 feet in width and runs north and south with a posted speed limit of 60 miles per hour. The grade of the approach to this rise in the road from either the north or the south is not in evidence. However, it does appear that on the north approach to this hill there is a no-passing zone marked by a yellow line on the highway prohibiting passing by southbound traffic. On the south side of the hill there is a similar line against passing by vehicles going north. Between the ends of these lines at the apex of the rise there is a gap of about 75 feet in the road that does not have a no-passing line. This is the top of the hill. According to the patrolman it is a flat area that slopes gently to the north. He said the south edge of this area where the no-passing line on the south side begins, is the crest or highest point of the hill and at its north edge the hill declines more sharply to the north. Near the southerly edge of the area on top a gravel road leads off to the west.

The plaintiffs, residents of Buffalo, were returning home from Bowman, North Dakota. On their return trip Mr. Myers drove their car, a 1953 Plymouth, to a point south of Ludlow, South Dakota, where Mrs. Myers took over the driving. Since they were proceeding south her lane of travel was to the west side of the highway. On the south side of the hill their car was run into from the rear by the Schmaltz Bros. 1958 Ford pickup, driven by their employee, Quenzer. One of the Schmaltz brothers and two of their employees who had been working on a construction job in North Dakota were in the pickup on their way to Belle Fourche. The left front of the pickup struck the right side of the back bumper of the Myers' car causing it to swing around on the highway and skid into the other or east lane where it stopped near the edge of the pavement headed north. The

pickup came to rest in the ditch to the west of the highway lying on its left side.

Mrs. Myers testified that as they approached the hill the weather was stormy. On the south side of the hill it was so severe that it affected her forward visibility. It was cloudy with some hail and rain and the wind blowing dust and weeds in the air. She stopped the car about 300 feet south of the crest of the hill and then backed up some 50 to 70 feet to get off the road, but realizing that she was getting into a position of danger she stopped and started forward. After she had gone ahead about 30 feet barely moving at a speed of about five miles per hour the pickup collided with their car. She had stopped backing up and was moving ahead when she saw the pickup come over the crest of the hill. To her "it looked like a streak." She said the east lane of the highway was clear.

Before the accident she saw a car and a semitrailer approaching from the south. The car had disappeared over the hill before she noticed the pickup. She saw the semi before the accident at which time it was from one-quarter to one-half mile south of the point of impact. The headlights of their car were on as were those on the northbound car and the semi, but the headlights of the pickup were not. At the time of the collision their car was near the edge of the road to her right. The testimony of Mr. Myers was generally to the same effect. There is no intimation in the record that the driver of the pickup saw or should have observed them on the road ahead of him before reaching the area in question.

The motor patrol officer arrived at the scene about 7 p.m. that evening. He was called as a witness by the plaintiffs and testified that the point of impact was about 106 feet south of the crest of the hill near the west edge of the blacktop. As to skid marks, he observed those made by the Plymouth as it skidded across the road, but no others. At later dates he took pictures of the scene which he testified were taken with the camera four feet and eleven inches above the road. He claimed that this height would

be about the eye level of Quenzer as he drove the pickup. In some of these he placed his patrol car, the top of which he said is 5½' lower than the top of a 1953 Plymouth, at the point of impact and photographed it from a couple points north of the accident scene. In one taken 285 feet north of the point of impact the top of the patrol car was visible but in connection with this picture he stated that a car down the road 75 feet from the point of impact backing north wouldn't be visible in the picture. In another view taken at a distance of 205 feet the patrol car was visible. In translating these distances into time he testified that a car traveling 60 miles an hour would go a distance of 88 feet in a second.

The testimony for the defendant was that at the time of the accident and for a short time before there were some dark clouds moving over the area and the weather was stormy with drizzling rain, wind and some intermittent sleet and hail but visibility was between four and five miles. While the semitrailer had its clearance lights on it did not have its headlights on. Nor did the Myers' car nor the car that went north just before the accident. They also testified their pickup was in good operating condition including the brakes and that their speed as they came over the crest could have been under 50 miles per hour but not over.

Quenzer, the driver of the defendant's truck, said that as he came over the knoll he saw the car that went by them going north, the Myers' car and the semi to the south. The Myers' car was 150 feet ahead of him sitting on the right-hand side of the road. He applied his brakes a couple of times and kept them on until the collision but that his truck skidded some. He veered his truck toward the ditch and had started into it at the time he hit the Myers' car. His brakes slowed him down some so that he was going about 40 miles per hour when they collided. The Schmaltz brother who was with him gave about the same version of the occurrence and said that the semi was about 200 yards south of the Myers' car. In addition he testified that

when they came over the hill and saw the Myers' car he expected it to be moving forward and when he realized it wasn't he told the driver to "hit the brakes" and seeing that they were going to collide he hollered "hit the ditch". After the accident he heard Mr. Myers say they were backing up to change drivers.

The driver of the semi coming from the south was a witness for the defendants. He testified that the Myers' car was stopped at the time of the collision and did not have its headlights on. When he first saw it he was from one-quarter to three-quarters of a mile away. For a short time his attention was distracted from the Myers' car by the car ahead of him going north over the hill, and when he next saw it a moment later the accident was happening. He didn't see the pickup before the impact. The ditch to the west of the accident scene was one that a vehicle could have driven into.

Another witness for the defendants, one Robert O'Connor, testified as to skid marks about 65 feet long in the west lane of the highway running from the top of the hill and ending about 65 feet north of the broad skid marks which went across the highway to the east. Mr. Myers told him that their purpose in backing up was to get off the highway on the side road that went west at the top of the hill. From photographs of the Myers' car in its damaged condition conflicting inferences could be drawn as to the force of the impact.

In its direction of the verdicts the trial court held that defendants were negligent as a matter of law and that there was not sufficient evidence to justify submitting the question of the contributory negligence to the jury. Ordinarily questions of negligence and contributory negligence, and the comparative extent thereof, are for the jury. It must be a clear case before a trial judge is justified in taking these issues from the jury. Our rule on this, last stated in Bogh v. Beadles, —S.D.—, 107 N.W.2d 342, 343, is that "* * * it is only where the facts are not in dispute or of such nature that reasonable men could not differ

that such issue becomes one for the court." In other words, these questions become a matter of law only when the facts from which the inferences can be drawn admit of but one conclusion. This occurs rarely.

■ ■ When faced with a motion to direct, the trial court is not free to weigh the evidence or gauge the credibility of the witnesses. These are matters for the jury. He must accept that evidence which is most favorable to the party against whom the motion is sought, and indulge all legitimate inferences in his favor that can fairly be drawn therefrom. Hansen v. Isaak, 70 S.D. 529, 19 N.W.2d 521; Johnson v. Chicago & N. W. Ry. Co., 71 S.D. 132, 22 N.W.2d 725 and Pearsall v. Colgan, 76 S.D. 241, 76 N.W. 2d 620. If, when so viewed, there is any substantial evidence to sustain the cause of action or defense it must be submitted to the jury. This is also the view we must take of the evidence when trial court determinations of this kind are challenged on appeal.

■ Plaintiff's motions for directed verdicts included numerous reasons why the defendants should be held negligent as a matter of law, but the record does not reveal which of these grounds the trial court relied on in its determination. However, assuming that they could be found negligent as a matter of law, the judgments must be reversed because the trial court erred in holding that there was not sufficient evidence to justify submitting the question of contributory negligence to the jury. Because the evidence on the question of defendants' negligence could be different on a retrial than it is in this record we do not think it useful to indicate our views on that issue.

In backing their car toward the crest of the hill Mrs. Myers was placing it in a position of danger. This she admitted. On direct examination she stated that she was looking back as she was backing up but did not see the pickup. She said she first saw it through the rearview mirror when she was going ahead. On cross-examination she testified that in backing up she looked through the back

window and that while so looking she could see to the top of the hill and saw the pickup coming and that when she saw it she shifted into a forward gear. She also said that Mr. Myers was looking back at the time she saw the pickup come over the hill and that she was not driving ahead at that time. On redirect she reiterated her direct examination testimony.

Accepting the version of this testimony and the other evidence most favorable to the defendants the jury could reasonably infer that the Myers' car remained in a position of danger until the collision, and that this contributed proximately to cause it. In such circumstances she would be guilty of contributory negligence because she unnecessarily placed and maintained their car in a position of danger. Haase v. Willers Truck Service, 72 S.D. 353, 34 N.W.2d 313; Ford v. Robinson, 76 S.D. 457, 80 N.W.2d 471. Whether it was slight or more than slight under our comparative negligence law would be for the jury.

Reversed.

All the Judges concur.