**L. Glen RILEY, Plaintiff-Appellee,**

v.

**FORD MOTOR COMPANY, Defendant-Appellant.**

**No. 30831.**

United States Court of Appeals, Fifth Circuit.

April 22, 1971.

Michael D. Knight, Paul W. Brock, Mobile, Ala., for defendant-appellant.

Reginald H. Stephens, Mobile, Ala., for plaintiff-appellee.

Before GEWIN, BELL and ALDISERT,* Circuit Judges.

ALDISERT, Circuit Judge:

A jury awarded the purchaser of a 1969 Lincoln Mark III automobile $30,000 in damages against Ford Motor Company for breach of warranty and negligent repair of certain defects. Appellant Ford insists that the district court erred in withdrawing from the jury the question whether the dealer acted as its agent, and argues that the damages were excessive as a matter of law. Having concluded that both contentions are correct, we must reverse and remand the cause for a new trial.

Appellee purchased his new automobile from a Florida dealer at a cost of $8,476.00, and Ford issued a self-styled "New Vehicle Warranty."[1] Shortly thereafter he took the car to Robinson Brothers, an Alabama Ford dealer, for repair of a window and removal of a noise in the rear end. According to Riley these defects were not corrected. At trial he testified that in the weeks following the requested repairs, and before the car was returned to Robinson Brothers for further repairs, these additional malfunctions developed: air conditioning did not work, speed control did not function, power seats became inoperative, the radio aerial functioned spasmodically, the rear seat did not fit, headlight panels were not synchronized, the cigarette lighter was missing, windshield wipers were defective, engine knocked upon acceleration, the transmission did not function properly, gear shift lever would not function, and the left door would not close properly.

Dissatisfied with the car's condition, appellee wrote to Ford setting forth in detail his complaints, and requesting Ford "to direct me to a dealer employing

---

* Of the Third Circuit, sitting by designation.

1. [Ford warrants] to the first retail purchaser only of a 1969 North American Ford-built passenger car that the Selling Dealer, at his place of business, and using new Ford parts or Ford authorized remanufactured parts, will repair or replace, free of charge * * * any of the following parts that are found to be defective in factory material or workmanship in normal use and service * * * within a period of:

12 months from the date of the original retail delivery or 12,000 miles of operation, whichever occurs first, with respect to all parts (except tires and tubes);

5 years from the date of original retail delivery or 50,000 miles of operation, whichever occurs first, with respect to the engine block and head, internal engine parts, water pump, intake manifold, transmission case, internal joints, rear axle. and differential.

The warranty further recited:

Ford assumes no responsibility for the loss of use of the vehicle, loss of time, inconvenience or other consequential expense. This warranty is expressly IN LIEU OF any other express or implied warranty, condition, or guarantee on the vehicle or any part thereof, including any implied WARRANTY OF MERCHANTABILITY OR FITNESS, and of any other obligation on the part of Ford or the Selling Dealer.

trained service personnel, or furnish me with someone capable of overseeing service personnel available in order to insure that the defects in my automobile are properly corrected in an expert and dependable manner." Ford dispatched a Technical Service Representative who road tested the automobile, agreed that it was not functioning properly, and offered to take it to Robinson Brothers where he would personally supervise its repair. The owner believed he had a better idea. Refusing to again leave his car with Robinson's, he brought this action against Ford seeking recovery on two theories: breach of warranty and negligent repair.

Because the negligence count is predicated on the alleged negligence of Robinson Brothers, recovery against Ford depends on a showing that the dealer was, in fact, an agent of the manufacturer. The evidence on this issue was conflicting. The contract between Ford and Robinson Brothers provided:

> This agreement does not, in any way, create a relationship of principal and agent between the company and the dealer and under no circumstances shall the dealer be considered to be the agent of the company. The dealer shall not act or attempt to act or represent himself directly or by implication as agent of the company or in any manner assume or create or attempt to assume or create any obligation on behalf of or in the name of the company.

Furthermore, Ford owned no stock in the dealership, paid no portion of its employees' salaries, paid no rental for the building it occupied, and had no employees stationed there for supervision or control. It is undisputed, however, that Robinson Brothers sent its mechanics to Ford's training school, received "factory campaign notices" relating to particular problems with certain models, and sold Lincoln-Mercury automobiles manufactured by Ford.

During the re-direct examination of William H. Robinson, the court interrupted testimony regarding the agency issue:

> I can't help what is in that contract. If Lincoln sells a car and says we warrant it, I don't care what is in the contract. They are acting for Ford Motor Company.

In this diversity action, we are referred to Alabama law for the relevant substantive law principles which will govern this case. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). It has long been the law of Alabama that "the question of agency is a matter of fact, which it is the province of the jury to determine upon, under the instructions of the court." Bank of Montgomery v. Plannett's Adm'r, 37 Ala. 222 (1861). See Sloss-Sheffield Steel & Iron Co. v. Watson, 239 Ala. 416, 194 So. 887 (1940); Wunderlich v. Southern Constr. Co., 27 Ala.App. 458, 174 So. 317 (1937). Cf. American Can Co. v. Horlamus Corp., 341 F.2d 730 (5 Cir. 1955).[2] That the district court, by its statement, "[t]hey are acting for Ford Motor Company," effectively removed the issue of agency from the jury is clear. It is equally evident that this amounted to reversible trial error.[3]

We turn now to the argument that the award of damages was excessive as a matter of law. Ford offers two theories in

---

2. See also Gizzi v. Texaco, Inc., 437 F.2d 308 (3 Cir., Jan. 20, 1971), a diversity case governed by New Jersey law, in which the Third Circuit reversed the district court on the ground that the question of apparent authority of the agent to bind the principal was for the jury.

3. Ford's requested charge number 18 was refused.

> The Court charges the jury that unless the plaintiff has established to your reasonable satisfaction, by a preponderance of the evidence, that at the time Robinson Brothers Lincoln Mercury attempted to repair the plaintiff's automobile it was the agent of the defendant, Ford Motor Company, then you cannot return a verdict against the defendant predicated on any negligence on the part of Robinson Brothers Lincoln Mercury in failing to repair the plaintiff's automobile.

support of this contention: (1) any recovery should have been limited, under the warranty, see note 1, *supra,* to "the cost of repairing or replacing any part or parts of the plaintiff's automobile that were defective," and, under the negligence count, to "certain other compensatory damages"; (2) assuming that the district court's charge permitting greater recovery was correct, there was no evidence to justify the jury's verdict of $30,000.

Title 7A Code of Alabama § 2–316(2) permits a seller to "exclude or modify" the common law warranties of merchantability and fitness,[4] and provides in subsection (4) that "[r]emedies for breach of warranty can be limited in accordance with the provisions of this article." Section 2–719 deals specifically with contractual modification or limitation of remedies. It states in subsection (1) (a) that an agreement may limit "the buyer's remedies * * * to repair and replacement of non-conforming parts." It further provides, however, in subsection (2) that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title." The Official Comment to this section declares:

> [I]t is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within the Article they must accept the legal consequences that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract * *. [U]nder subsection (2), where an apparently fair and reasonable clause

because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article.

*See* Tiger Motor Co. v. McMurtry, 284 Ala. 283, 224 So.2d 638 (1969); General Motors Corp. v. Earnest, 279 Ala. 299, 184 So.2d 811 (1966).

The question whether the remedy provided in Ford's warranty did "fail of its essential purpose" was presented to jury in somewhat different terms. The district court charged that it was for the jury to decide whether "the defendant, Ford Motor Company, has breached its warranty and [whether] they were given a reasonable opportunity to repair it, and they didn't." [5] That the jury refused to give effect to the limitation of remedy contained in the warranty is manifest in light of the size of the verdict it returned. Under the facts of this case, we are unable to conclude that the jury was unjustified in its implicit finding that the warranty operated to deprive the purchaser "of the substantial value of the bargain."

At the same time, however, we cannot validate the jury's award of $30,000. The district court correctly instructed as to the measure of damages:

> Now, I charge you that if you find that the defendant, Ford Motor Company, has breached its warranty and that they were given a reasonable opportunity to repair it, and they didn't then the proper measure of damages for breach of warranty is this: the difference in the value of the automobile as it was represented and war-

---

4. (2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be in writing and conspicuous.

5. We can agree with the appellee's contention that at some point after the purchase of a new automobile, the same

should be put in good running condition, that is, the seller does not have an unlimited time for the performance of the obligation to replace and repair parts. * * * This is not more than saying that at some point in time, it must become obvious to all people that a particular vehicle simply cannot be repaired or parts replaced so that the same is made free from defect.
General Motors Corp. v. Earnest, *supra,* 279 Ala. at 302, 184 So.2d at 814.

ranted to be and the value it really was at the time of its delivery.

The measure of damages may also include any incidental damage, as you may think is proper, such as any expenses, reasonably incurred, in acquiring any substitute means of transportation during such reasonable time as it would take to repair the defects in the automobile.

This was consistent with the directive of 7A Code of Alabama § 2–714:

(1) Where the buyer has accepted goods * * * he may recover as damages for any non-conformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount * *.

(3) In a proper case any incidental and consequential damages under the next section may also be recovered. [See section 2–715.]

Under this standard, the jury's award here was clearly excessive.

 The purchase price of the automobile was $8,476. In response to questions propounded by the trial court, plaintiff declared that the car "hasn't been worth anything to me." Even accepting this testimony as sufficient to establish that the automobile was worthless at the time of delivery, "the difference in the value of the automobile as it was represented and warranted to be and the value it was at the time of delivery" could not have exceeded the price of $8,476. Adding to this the reasonably incurred cost of a substitute means of transportation, which, at the most, amounted to $430.43,

plaintiff's total recovery would have been limited to $8,906.43.[6]

We agree that that $30,000 jury verdict was not supported by the evidence. The court erred in entering judgment upon it. S. D. Winn Cigar Co. v. Wilson, 36 Ala.App. 466, 48 So.2d 64, citing Stetson v. Stindt, 279 F. 209, 211 (3 Cir. 1922): "[A] verdict * * * which is perverse and directly violative of the charge of the court and is wholly without evidence to support it, cannot stand. * * * *"

Reversed and remanded for a new trial.

---

6. Recovery under the terms of the warranty would have been limited to approximately $896.00, the cost of repairs, including parts and labor. Additional recovery under the negligence count for substitute transportation would have increased the total to $1,326.43.