EHLERS, Respondent v. CHRYSLER MOTOR CORPORATION, Appellant

(226 N.W. 2d 157)

(File No. 11381. Opinion filed February 21, 1975)

R. E. Morgan, Morgan & Fuller, Chamberlain, for defendant and appellant.

Wally Eklund and Charles Rick Johnson, Johnson, Johnson & Eklund, Gregory, for plaintiff and respondent.

WINANS, Justice.

This is an action for breach of warranty arising out of the sale of a Chrysler automobile by the Ryan Motor Company of Sioux Falls, South Dakota. The alleged breach, ·and the jury so found, was that the vehicle was delivered with an undersized crankshaft, the car was noisy, windows were incorrectly installed and the transmission would not shift properly.

Upon realizing the existence of these defects respondent returned the car to Ryan Motors for repairs under the warranty. Warranty repair work was refused because in Chrysler's opinion the car's mileage had been altered by disconnecting the speedometer cable. Such an action would negate the warranty under the condition contained therein that "this warranty will not apply to any vehicle on which the odometer mileage is altered".

We must first decide the question of the admissibility of a letter written by the plaintiff-respondent to the officers of Chrysler Corporation outlining the problems respondent had experienced with the car, and demanding that Chrysler honor the warranty. The letter contained the following statement: "Further a Chrysler Dealer informed me there have been parts placed in this car that are not the proper parts * * * also * * * in his opinion we would never hold a transmition [sic] in this car with this motor in it."

It is contended by appellant that this statement is inadmissible as hearsay, and as opinion evidence concerning a subject of a highly technical nature, which is beyond the everyday knowledge of most jurors.

Respondent answers, and we agree, that the letter was properly admissible to show notice of the defect had been given to the seller. SDCL 57-7-15, which is the counterpart of the Uniform Commercial Code, Section 2-607(3), reads as follows:

"Where a tender has been accepted

> (1) The buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy   \*   \*   \*."

■ Due to this action being litigated as one for breach of warranty, the burden was on respondent, as the buyer, to show that he had given proper notice pursuant to statute. The letter in question served this purpose.

This proposition is supported by Jan Ree Frocks v. Pred, 1942, 68 S.D. 356, 359, 2 N.W.2d 696, 697. Referring to a forerunner of SDCL 57-7-15, Notice to seller of breach, the court stated:

> "Acceptance of goods, however, does not discharge the seller from liability in damages or other remedy for breach of the contract, unless the buyer fails to give notice to the seller of the breach within a reasonable time after he knows or ought to know of it.   \*   \*   \* The purchaser has neither a right of action for the breach of a promise or warranty nor a defense for the purchase price, unless the required notice has been given.   \*   \*   \* *The giving of such notice must be pleaded and proved by the purchaser seeking to recover or defend for the breach of warranty.*" (citations omitted and emphasis supplied)

■ Clearly, the notice provision of SDCL 57-7-15 (U.C.C. 2-607(3)), is a fundamental prerequisite of a buyer's recovery for breach of warranty. We hold therefore that the letter transmitted from respondent to Chrysler was properly admitted to establish that the statutorily required notice of breach was given in a timely fashion.

Appellant next maintains that the trial court committed error by not granting its motion for a directed verdict at the close of the testimony. See SDCL 15-6-50(a).

On a motion for a directed verdict the trial judge:

"must accept that evidence which is most favorable to the party against whom the motion is sought, and indulge all legitimate inferences in his favor that can fairly be drawn therefrom. * * * If, when so viewed, there is any substantial evidence to sustain the cause of action or defense it must be submitted to the jury." Myers v. Quenzer, 1961, 79 S.D. 248, 254, 110 N.W.2d 840, 843.

■ In ruling on this motion it was not the trial court's function, and is not now ours, to weigh the evidence or judge the credibility of witnesses. Our review is limited to the sole question of whether, in the light most favorable to the nonmoving party, there was "any substantial evidence to sustain the cause of action." In other words, was there a failure of proof on the part of the plaintiff-respondent to establish a valid cause of action?

■ Appellant bases its contention that a directed verdict was in order on evidence which it argues shows that the vehicle's mileage meter (odometer) had been tampered with. Under the terms of the warranty such tampering would end coverage.

The only supportive evidence offered by appellant Chrysler was the testimony of several Ryan Motor Company employees who stated they observed the speedometer cable was disconnected from the "speed set" on the car in question. From the fact of disconnection the naked inference may be drawn that respondent had tampered with the cable.

In opposition to this inference evidence was produced through several witnesses and the vehicle's oil change slips to the effect that the odometer reading on the car was accurate when it was delivered for warranty work.

Respondent's evidence stands in direct conflict with the inference of tampering relied on by Chrysler. This court believes evidential conflicts such as this are properly resolved by a jury under instruction from the Trial Judge.

Because there is substantial evidence that respondent did not meddle with the vehicle's odometer, a well-grounded cause of action was presented by respondent's claim. The trial court,

therefore, correctly decided not to short-circuit respondent's case by granting the directed verdict.

Appellant attempts to avoid imposition of liability by shielding itself behind the disclaimer contained in the vehicle's warranty which limits Chrysler's obligation to repair and replacement:

> "THIS WARRANTY IS IN LIEU OF ANY OTHER WARRANTIES OR CONDITIONS, INCLUDING MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. THE REMEDIES UNDER THIS WARRANTY ARE EXCLUSIVE AND NEITHER CHRYSLER CORPORATION NOR CHRYSLER MOTORS CORPORATION ASSUMES NOR AUTHORIZES ANYONE TO ASSUME FOR THEM ANY OTHER OBLIGATION."

Although somewhat obscure, it appears to be Chrysler's contention that the disclaimer should be given effect because it complies with pertinent provisions of the Uniform Commercial Code (U.C.C.) as set forth in SDCL.

Specifically, SDCL 57-8-49 (U.C.C. 2-719(1), Agreeements limiting or excluding remedies, in pertinent part provides:

> "(1) The agreement may provide for remedies in addition to or in substitution for those provided in chapters 57-2 to 57-8, inclusive, and may limit or alter the measure of damages recoverable under said chapters, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and
>
> (2) Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy."

While this statute seems to provide Chrysler the shield it seeks, another provision, SDCL 57-8-50 (U.C.C. 2-719(2)), strips away the defense:

> *"Failure of exclusive or limited remedy, effect.—* Where the circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title."

Respondent does not contend that the limitations contained in the disclaimer are intrinsically unfair or unreasonable. He does contend that, while the limiting of remedies is proper, Chrysler may not rely on its disclaimer because the breach has caused the limited remedy to "fail of its essential purpose". Chrysler's breach occurred when it failed for an unreasonably long time to repair or replace defects in respondent's automobile.

█ Referring to U.C.C. 2-719(2), the parallel provision to SDCL 57-8-50, it was stated that:

> "[T]his provision 'is not concerned with arrangements which were oppressive at their inception, but rather with the application of an agreement to novel circumstances not contemplated by the parties.' " J. White and R. Summers, Handbook Of The Law Under the Uniform Commercial Code (1972).

Thus, what was once fair, but due to novel circumstances is no longer, is the purview of this statute. As stated in the Official Comment to U.C.C. 2-719(2) (SDCL 57-8-50):

> "* * * where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article."

█ By delaying for an unreasonable length of time the repair of respondent's vehicle, appellant deprived him of the "substantial value of the bargain." Stated otherwise, the warranty was breached causing the available remedy "to fail of its essential purpose". Such failure brings into play all otherwise available remedial devices, to-wit: SDCL 57-8-39 (U.C.C. 2-715(1)), Incidental damages from seller's breach; and 57-8-40 (U.C.C. 2-715(2)), Consequential damages from seller's breach.

Support for our holding is found in Riley v. Ford Motor Company, 1971, 5 Cir., 442 F.2d 670. In Riley, a case strikingly similar to our own, plaintiff purchased a new automobile, which was covered by a warranty limiting the company's responsibility to repair or replacement of improperly working parts. Numerous defects were almost immediately discovered. Because they were unsatisfactorily repaired, plaintiff brought suit against the company.

Whether the remedy provided in the warranty did "fail of its essential purpose" was presented to the jury by asking them if "the defendant, Ford Motor Company, has breached its warranty * * *". 442 F.2d at 673. In the instant case the jury was asked "Did the defendant breach its obligations to the plaintiff under the warranty?" In Riley an affirmative answer to this query was held to be an implicit acknowledgement that the exclusive remedy of repair and replacement had failed of its essential purpose. This conclusion is drawn because even after defendant attempted to render the car free of defects, it remained defective. The Riley court concluded:

"Under the facts of this case, we are unable to conclude that the jury was unjustified in its implicit finding that the warranty operated to deprive the purchaser 'of the substantial value of the bargain.' " 442 F.2d at 673.

As previously noted in this opinion, the Official Comment to U.C.C. 2-719(2), the counterpart of SDCL 57-8-50, states that this section of the code is activated when an otherwise reasonable clause, due to circumstances, deprives a party of the substantial value of his bargain. Because of the failure to repair, such was the situation in Riley, as it is in the instant case.

Appellant, in effect, seeks to repudiate its obligation under the warranty to repair or replace defective parts; while at the same time it attempts to shield itself behind the beneficial limitation clause contained in the same document:

"This Court would be in an untenable position if it allowed the defendant to shelter itself behind one segment of the warranty when it has allegedly repudiated

and ignored its very limited obligations under another segment of the same warranty, which alleged repudiation has caused the very need for relief which the defendant is attempting to avoid." Jones & McKnight Corp. v. Birdsboro Corporation (D.C.Ill.1970) 320 F.Supp. 39, 43.

It is impermissible for appellant to choose which sections of the warranty to be bound by. Appellant Chrysler's actions in breaching the warranty by refusing to honor its obligations under it has caused the limited remedy of repair and replacement "to fail of its essential purpose". It necessarily follows that plaintiff-respondent is entitled to seek damages for incidental and consequential losses caused by appellant's breach.

Finally, the claim is made by appellant that the jury's verdict is so patently excessive as to conclusively be the result of passion and prejudice.

It is provided by SDCL 15-6-59(a)(5) that "Excessive or inadequate damages appearing to have been given under the influence of 'passion or prejudice", is grounds for a new trial. To find an excessive award within the meaning of this statute " 'the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for  *  *  (we) have no standard by which to ascertain the excess.' " Brewer v. Mattern, 1971, 85 S.D. 356, 365, 182 N.W.2d 327, 333.

In making this determination we are also mindful that we, like the trial court, must draw those inferences from the evidence which are most favorable to the successful party. Byre v. Wieczorek, 1974, 88 S.D. 185, 217 N.W.2d 151. Because of the trial judge's participation in the trial he is uniquely qualified to know whether an excessive verdict resulted from passion or prejudice. Wide discretionary latitude is placed in the trial judge's hands, which this Court will not interfere with on appeal without a clear showing of abuse. Stene v. Hillgren, 1958, 77 S.D. 165, 88 N.W.2d 109.

Although substantial, we do not find the damages in this case to "be flagrantly outrageous and extravagant". In Riley v.

Ford Motor Company, supra, the court found a jury verdict of $30,000 for an automobile purchased for $8,476 to be excessive; and we agree. The case at bar, however, presents no such example of jury extravagance. Respondent's vehicle was purchased for $5,416 and the jury's verdict was in the amount of $3,500. The evidence adduced at trial shows a wide divergence between the car paid for and that received. It is unnecessary to catalog the multitude of defects contained in the car. Suffice it to say that, colloquially speaking, the vehicle in question appears to possess the identifying characteristics of a "Friday evening special." We find no abuse of discretion.

Affirmed.

DUNN, C. J., and DOYLE and COLER, JJ., concur.

WOLLMAN, J., concurs in part and dissents in part.

WOLLMAN, Justice (concurring in part and dissenting in part).

Although I agree that the jury's finding that Chrysler had breached its warranty should be affirmed, I do not believe that SDCL 57-8-50 is applicable to this case.

> "There are probably relatively few situations where a remedy can fail of its essential purpose. Section 2-719(2) (SDCL 57-8-50) will probably be called into action most often in cases like *Riley* [v. Ford Motor Co., 5 Cir., 442 F.2d 670] when the exclusive remedy involves replacement or repair of defective parts, and the seller because of his negligence in repair or because the goods are beyond repair, is unable to put the goods in warranted condition.   *   *   *" J. White and R. Summers, Handbook of the Law Under the Uniform Commercial Code, Sec. 12-10, p. 382.

Instruction No. 8, to which defendant made no objection, fixed the measure of damages as the difference between the actual value of the automobile at the time of delivery to the

plaintiff and the value the automobile would have had if the warranty had been complied with. This instruction was presumably based upon SDCL 57-8-37 (U.C.C. 2-714(2)). Under this measure of damages, the cost of repair is of great significance.

"The 2-714(2) formula (difference between the value of goods as accepted and the value of goods as warranted) is essentially the same as the pre-Code formula. A useful objective measurement of the difference in value as is and as warranted is the cost of repair. Thus, if a buyer accepts a truck with a defective radiator, a good measure of the difference between the value of the truck as warranted and its value as delivered is the price of a new radiator less the value of the faulty one." J. White and R. Summers, supra, Sec. 10-2, p. 308. (footnote omitted)

The verdict is clearly excessive. Plaintiff offered no probative evidence of value other than to give his opinion that the car was worth only $500 to him. There was competent evidence introduced by defendant to show that the entire transmission could have been replaced for approximately $400. For all of plaintiff's complaining about the motor, the mechanic who worked on the car at Willrodt Motors in Chamberlain testified that the car ran well after he had worked on it in February of 1972. One of the service men at Ryan Motors in Sioux Falls testified that after the manifold bolts had been tightened the engine "was quiet and run like a clock."

I would reverse and remand for a new trial on the issue of damages.